RECEIVED JUN 0 8 2018 AT 8:30_____M WILLIAM T. WALSH CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DEBRA BRANCATO,

    *Plaintiff*,

v.

SPECIALIZED LOAN SERVICING, LLC,

    *Defendant*.

Civil Action No:
15-cv-6780 (PGS)(LHG)

**MEMORANDUM
AND
ORDER**

SHERIDAN, U.S.D.J.

This matter comes before the Court on Plaintiff Debra Brancato's motion for partial summary judgment and Defendant Specialized Loan Services, LLC's motion for summary judgment. (ECF No. 43; ECF No. 45).[1] Plaintiff Debra Brancato ("Brancato" or "Plaintiff") asserts various claims against Defendant Specialized Loan Services, LLC ("SLS" or "Defendant") arising out of a consumer credit agreement. Plaintiff had also previously filed a second action against Defendant, docket number 3:16-cv-05504, which was consolidated into this parent case on November 14, 2016. (ECF No. 34). For the reasons discussed herein, Plaintiff's motion for partial summary judgment is denied, and Defendant's motion for summary judgment is granted in part and denied in part.

---

[1] Parties appear to have filed the same motions multiple times. At oral argument, counsel explained that the motions were filed multiple times in attempt to seal them. Upon review, the Court notes that the motions are identical, thus this opinion addresses ECF No. 43, 62, 45, and 47.

1

I.

In May 2006, Plaintiff Debra Brancato, and Peter Brancato, her husband at the time, (collectively the "Borrowers"), entered into a home equity loan/line of credit in the amount of $20,000.00 ("the Loan") with Countrywide Home Loans, Inc. ("Countrywide"). (SLS Statement of Material Facts Not in Dispute (SUMF) ¶3, ECF No. 46-35). Countrywide then sold certain mortgage loans, including the Borrowers' Loan, to Greenwich Capital Financial Products, Inc. ("Greenwich") in September 2006. *Id.* ¶4. On October 2, 2006, Greenwich assigned the beneficial interest in the Loan to E*Trade Bank ("E*Trade") pursuant to an Assignment, Assumption and Recognition Agreement which retained Countrywide as the loan servicer. *Id.* ¶5.

On August 5, 2009, Bank of America, N.A. ("BOA"), having replaced Countrywide as the Loan's servicer at an unspecified date, sent the Borrowers a Notice of Intention to Foreclose as a result of failure to maintain payments. *Id.* ¶6. BOA and the Borrowers entered into a loan modification on November 4, 2009 which capitalized the Borrowers' arrears and terminated their right to take additional advances on the Loan. *Id.* ¶7.

In 2010, Plaintiff defaulted on payments to BOA due to marital difficulties. (Brancato Statement of Undisputed Material Facts (SUMF) ¶4, ECF No. 44-3). BOA consequently sent Peter Brancato a Notice of Intention to Foreclose as a result of the Borrowers' failure to make payments on March 12, 2010. (SLS SUMF ¶8). E*Trade then directed on July 22, 2010 that the Loan be "charged off" as delinquent for more than 180 days. *Id.* ¶9. Plaintiff made a lump sum payment to BOA in July 2011 for all arrears and became up to date with the payments. (Brancato SUMF ¶5).

On December 1, 2011, Defendant SLS[2] acquired the servicing rights for Plaintiff's Loan from BOA. (SLS SUMF ¶10). Thereafter, Plaintiff made timely payments on the loan. (Brancato

---

[2] SLS is the only remaining Defendant in this case. Although Plaintiff had originally brought claims against Trans Union and all claims against E*Trade were dismissed with prejudice. [ECF No. 32].

2

SUMF ¶15-16). Despite the Plaintiff supposedly being up to date, SLS allegedly began reporting the account as not current. (Pl. Br. at 6; ECF No. 44-2). On February 27, 2012, Plaintiff requested that SLS remove Peter Brancato's name from the loan, due to divorce. On March 5, 2012, SLS responded to Plaintiff's letter informing her that she would have to refinance the Loan to have it show in her name only.

On April 3, 2013, Plaintiff spoke on the phone with an SLS representative about the incorrect reporting and subsequently sent a qualified written request ("QWR")[3] related to the error on April 18, 2013. (Brancato SUMF ¶44-46; SLS SUMF ¶11-12). SLS responded to the QWR on April 22, 2013, indicating they would investigate the discrepancy and issue a report within thirty business days. (SLS SUMF ¶12). On May 15, 2013, SLS responded again to Plaintiff, identifying the error as a misapplication of payment and subsequent correction. *Id.* ¶13.

Plaintiff alleges that the errors were not corrected and that billing statements continued to be sent, stating the account was past due and that SLS began reporting the account as "charged off" to credit reporting agency Trans Union. (First Amended Complaint ¶16-17, ECF No.57-3).[4] In September and August of 2013, Plaintiff disputed the credit information with Trans Union, however, SLS allegedly verified to Trans Union that the information it had on record was correct without mentioning that the Plaintiff was actively disputing the account with SLS. *Id.* ¶18-19. SLS subsequently received an automated credit dispute verification ("ACDV") from Trans Union on September 3, 2013. (SLS SUMF ¶ 15).

---

[3] 12 U.S.C. § 2605(e)(1)(B) Qualified written request -
 . . . a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that:
    (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
    (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

[4] The Amended Complaint from the member case was included in this docket as Exhibit 2 in SLS's Brief in Opposition.

3

On October 4, 2013, Plaintiff sent another QWR to SLS relating to the allegedly erroneous billing. (FAC ¶21). SLS responded and indicated it would correct the errors, though Plaintiff disputes the errors were actually fixed. (*Id.* ¶22-23). Sometime in November 2013, Plaintiff reported to Trans Union that SLS was providing Trans Union with erroneous credit information. In 2015, Plaintiff continued to dispute the erroneous information with SLS via email on January 1, 3, 8, and 17 and February 5. (*Id.* ¶34-38.) In response to Plaintiff's February 5 email, SLS responded by noting that it does not accept disputes by way of email. (*Id.* ¶38.)

On September 10, 2015, Plaintiff filed a lawsuit against SLS and Trans Union, claiming she was denied credit "substantially due to Defendant's erroneous and illegal credit reporting."(Complaint, ECF No. 1; FAC ¶39). Sometime in April 2016, Plaintiff again disputed the erroneous credit information SLS was allegedly reporting to Trans Union, subsequently filing an amended complaint on October 27, 2016 to include these alleged transgressions. (FAC ¶40-41). Since then, Plaintiff has raised causes of action under the Fair Credit Reporting Act ("FRCA"), the Real Estate Settlement Procedures Act ("RESPA"), the New Jersey Consumer Fraud Act ("CFA"), common law doctrines of negligence and recklessness, and the Fair Debt Collection Practices Act ("FDCPA").

As noted above, Plaintiff filed a second action against SLS on September 9, 2016, subsequently consolidated with this action on November 10, 2016. In addition, Trans Union was dismissed from this case on November 8, 2016, leaving SLS as the sole defendant. (Stipulation and Order of Dismissal, ECF No. 32).

At present, Plaintiff moves for summary judgment on Defendant's violation of the FCRA and the FDCPA as a matter of law. Defendant moves for summary judgment on all claims for lack of genuine issues of material fact.

II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all

5

credibility determinations in his favor...that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

III.

Plaintiff asserts five claims against Defendant. While Plaintiff moves for summary judgment only on Counts I and V, Defendant moves to dismiss all five claims. Each claim is in the order they are presented in the Amended Complaint.

In the Amended Complaint, Plaintiff brought the following causes of action against SLS:
- The Fair Credit Reporting Act (FCRA) (Count I)
- The Real Estate Settlement Procedures Act (RESPA) (Count II)
- The New Jersey Consumer Fraud Act (CFA) (Count III)
- Common Law Doctrines of negligence and recklessness (Count IV)
- The Fair Debt Collection Practices Act (FDCPA) (Count V)

1. **Count I - Fair Credit Reporting Act (FCRA)**

Plaintiff first alleges Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, by failing to conduct a reasonable investigation of the erroneous information, and that Defendant's policies are illegal as a matter of law. (Pl. Br. at 22, 33).

The FCRA was enacted to "require . . . consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). "The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)(citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted)).

Though there is no private right of action under 15 U.S.C. § 1681s-2(a), the Third Circuit has held there is a private right of action under § 1681s-2(b). *See SimmParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011). This private right of action requires the furnisher of credit information to conduct a "reasonable investigation" of a dispute filed by a consumer against a credit reporting agency in accordance with the guidelines set forth by § 1681s-2(b). *See Seamans v. Temple Univ.*, 744 F.3d 853, 866 (3d Cir. 2014). To proceed with an action under § 1681s-2(b), the Plaintiff must dispute the accuracy or the completeness of information reported by a furnisher to a consumer credit agency, after which the furnisher must conduct a reasonable investigation. *See* 15 U.S.C. § 1681s-2(b). Failure to do so gives rise to an action.

Plaintiff asserts that SLS failed to conduct a reasonable investigation in accordance with this provision. (Pl. Br. at 33-34). According to Plaintiff, SLS failed to properly investigate the account when it failed to correct the account's status as "charged off" after multiple disputes by the Plaintiff were lodged. (*Id.* at 34.) By failing to check the dispute with E*Trade or BOA, SLS allegedly failed to meet this requirement by allowing Trans Union to report the account as charged off. *Id.* Plaintiff alleges a sufficiently thorough investigation could not have been conducted in the five to ten minute time period; as such, SLS failed to adequately investigate. (Pl. Br. at 38).

Aside from alleging a failure by SLS to conduct a reasonable investigation, Plaintiff also alleges that Defendant's reporting policies violate several provisions of the FCRA, namely SLS's failure to report disputed accounts, misreporting the date of first delinquency, failure to update balance owed, and misreporting of last payment date. (Pl. Br. at 25-32). Plaintiff alleges Defendant violated § 1681s-2(b) by failing to report the disputed account at issue. Plaintiff cites testimony from Defendant's deposition to bolster this assertion:

7

| | |
|---|---|
| Question - | Okay. And TransUnion then sent a ACDC over to SLS and said, "Can you please investigate these things;" correct? |
| Answer - | Yes. |
| Question - | And SLS responded back to TransUnion after investigating the dispute; correct? |
| Answer - | Yes. |
| Question - | And when SLS reported that information back to TransUnion in none of these ACDVs did SLS report back to TransUnion that Miss Brancato disputed the credit information; correct? |
| Answer - | Yes. |
| Question - | And is that in compliance with SLS's policies regarding credit reporting? |
| Answer - | Well, yeah, because the account's already under dispute, I mean, how do you double dispute an account? |
| Question - | Miss Brancato disputed the account with SLS as well as with TransUnion; correct? |
| Answer - | Right. |
| Question - | And SLS never reported to TransUnion that the Account was disputed; correct? |
| Answer - | Correct. |

(Exhibit C, Ward Deposition at 197-98; Pl. Br. at 26-27).

Plaintiff next alleges SLS violated the FCRA by misreporting the date of the first delinquency. (Pl. Br. at 28). Per 15 U.S.C. § 1681c(a)(4), credit reporting agencies are prohibited from writing credit reports that contain delinquencies older than seven years. As clarified in *Seamans*, the seven year period is calculated based on the date of first delinquency. *Seamans*, 744 F.3d at 860 (stating that the date of delinquency is defined as "the month and year of the commencement of the delinquency on the account that immediately preceded the action") (citing 15 U.S.C. § 1681(c)(a)(4)). Plaintiff claims that since the only delinquency on the account occurred in 2010, SLS improperly "de-aged" the account by misreporting the date of delinquency as June

8

2013, leading Trans Union to conclude the seven-year period began to run in June 2013. (Pl. Br. at 29).

Plaintiff next alleges that SLS never updated the balance owed on the account. (Pl. Br. at 31). Plaintiff asserts that she in-fact overpaid on several occasions, payments that were meant to be applied to the principal, but that this did nothing to prevent SLS from misreporting the balance to Trans Union. (Pl. Br. at 31). SLS stated during deposition that as the account had been charged off, their policy is not to report a declining balance. (Pl. Br. at 31; Exhibit H, Korb Deposition at 93-98, 105-116).

Lastly, Plaintiff alleges that SLS misreported the last payment date, something that conflicts with the Credit Reporting Resource Guide ("CRRG"), a manual that SLS claims to follow in its operation. (Pl. Br. at 32). Rather than report the last reported payment on the day the consumer made their last payment, Plaintiff alleges that SLS's policy is to report the last payment as of the date the furnisher first began reporting the debt, "regardless of whether the consumer made payments after that date." *Id.*

Defendant SLS disputes all of the above allegations, arguing that Plaintiff failed to demonstrate any willful acts of violating the FCRA in any of the above allegations and that the investigation into Plaintiff's account was in fact reasonable. (Def. Opposition at 14-16, ECF No. 57).

Defendant also argues that Plaintiff's FCRA claim is barred pursuant to a two-year statute of limitation for this action.[5] *See* 15 U.S.C. § 1681(p). In her reply brief, Plaintiff cites multiple

---

[5] 15 U.S. Code § 1681p - Jurisdiction of courts; limitation of actions
An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—
(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
(2) 5 years after the date on which the violation that is the basis for such liability occurs.

9

incidents on which she based allegations that Defendant violated 15 U.S.C. 1681s-2(b): September 4, 2013 (Exhibit Q); December 13, 2013 (Exhibit W); January 7, 2014 (Exhibit Z); January 21, 2014 (Exhibit BB); March 9, 2014 (Exhibit EE); March 7, 2016 (Exhibit FF); and April 15, 2016 (Exhibit GG). (Pl. Reply at 5, ECF No. 61). The statute permits actions to be brought no later than two years after the plaintiff discovers the alleged violation, or no later than five years after the date of the actual alleged violations, whichever expiration occurs first. *See* 15 U.S.C. § 1681p. This FCRA claim was first raised on September 10, 2015, so all of the instances of violations fall within the five year limit, and all but the one September 4, 2013 instance fall within the two year time limit.

In reviewing the motion for summary judgment, one must determine whether there are disputed facts. "When assessing reasonableness, the factfinder must balance 'the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.'" *See Seamans*, 744 F.3d at 865 (citing *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010)); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996). Such an inquiry gives rise to facts that must be assessed by the trier of fact. Given multiple disputed facts concerning SLS's investigation, a factfinder must determine whether Defendant's investigation was in fact "reasonable", including whether SLS actually omitted or misreported any information. As such, the motions for summary judgment on Plaintiff's FCRA claim are denied.

## 2. Claim II - Real Estate Settlement Procedures Act

Plaintiff alleges numerous violations of the Real Estate Settlement Procedures Act (RESPA), due to: (a) SLS's failure to respond to Plaintiff's QWR within the 60 days (12 U.S.C. § 2605(e)(2)); (b) failure to correct Plaintiff's account (12 U.S.C. § 2605(e)(2) and 24 C.F.R. §3500.21(e)(3); (c) its improper reporting of Plaintiff's Loan as overdue and charged off (12

10

U.S.C. § 2605(e)(4)(i)); (d) its refusal to cease collection attempts following receipt of a QWR (12 U.S.C. § 2605(e)(2)); and (e) its failure to conduct an appropriate investigation following receipt of QWRs (12 U.S.C. § 2605(e)(2)). (Complaint ¶51-55).

Defendants dispute this and argue instead that Count II should be dismissed "because each of Plaintiff's allegations are refuted by evidence in the record," noting that SLS sent timely responses to all inquiries, was under no obligation to cease collection efforts, and did not cause any damage to Plaintiff. (Def. Br. at 10-11, ECF No. 45).

In RESPA claims, a plaintiff must first "allege[] sufficient facts constituting a breach of RESPA duties." *See Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 382 (D.N.J. 2006). After sufficient breach allegations, plaintiff must then allege damages:

> [I]n order to bring a claim under RESPA, a plaintiff must sufficiently allege one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of §2605. Additionally, when basing a claim on actual damages, the borrower has the responsibility to present specific evidence to establish a causal link between the financing institution's violation and their injuries.

*Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d. 778, 781 (D.N.J. 2016).

A key dispute between the parties is whether SLS made appropriate corrections, if any at all, in response to the Plaintiff's QWRs. A RESPA statute (12 U.S.C. §2605 (e)) outlines the duty of loan servicers to respond to a borrower's inquiries.

§2605 (e)(2)(A)-(B) state:

> Action with respect to inquiry. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

11

>    (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>    >    (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>    >    (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower...

The record reflects that SLS may have timely responded to Plaintiff's QWSs (SLS Statement at 3-4); however, the question of whether the corrections made by SLS's representative to Plaintiff's account were considered "appropriate" per § 2605(e)(2)(A) is for the trier of fact to decide, not this Court, thereby precluding summary judgment.

For the above reasons, Defendant's motion for summary judgment on Count II is denied.

### 3.  Count III - New Jersey Consumer Fraud Act (CFA)

Plaintiff next alleges SLS violated the CFA by "falsely [informing] Plaintiff that her loan had been acquired in a 'charged off' state." (Complaint ¶57). This misinformation supposedly served as a tax benefit to SLS while it allegedly caused Plaintiff to suffer damages, including lost time, money, and emotional distress. *Id.*

In response, SLS asserts two arguments. First, it contends that any claims under the CFA are preempted by the FCRA, citing *Hutchinson v. Delaware Savs. Bank FSB*, 410 F. Supp. 2d 374 (D.N.J 2006) (holding that a creditor's CFA claim alleging erroneous reporting was preempted by the FCRA) *Id.* at 384. Secondly, SLS argues that Plaintiff's CFA claim must be dismissed for failure to properly plead a claim under CFA. (Def. Br. at 13-14).

In *Hutchinson*, this Court found the recovery under the CFA was preempted where the claim was based on alleged conduct regulated by the FCRA. *Hutchinson*, 410 F. Supp. 2d at 386. Here, as mentioned above, that is not necessarily the case.

12

Defendants argue that Plaintiff has not demonstrated a claim under the CFA. "In order to prevail upon a CFA claim, a plaintiff must establish '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Petinga v. Sears, Roebuck & Co.*, No. 05-5166, 2009 U.S. Dist. LEXIS 48693 (D.N.J. June 9, 2009) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557, 964 A.2d 741 (2009) (citations omitted)). Here, the alleged unlawful conduct by Defendant is SLS's unlawful practices, further defined as "affirmative acts, knowing omissions, and regulation violations." N.J.S.A § 56:8-2.

Defendant, relying upon a Third Circuit decision, argues that a consumer cannot prevail on a CFA claim as his complaint was not actually based on anything the defendant firm had sold or advertised to him. *Huertas v. Galaxy Asset Mgmt*, 641 F.3d 28, 35. As the Third Circuit noted, "[T]he reach of the [CFA] is intended to encompass only consumer oriented commercial transactions involving the marketing and sale of merchandise or services."*Id.* (citing *Del Tufo v. Natl'l Republican Senatorial Comm.*, 591 A.2d 1040, 1042 (N.J. Super. Ct. Ch. Div. 1991)). The Third Circuit rationale applies here. Plaintiff never bought any merchandise or real estate from Defendant, meaning that Plaintiff, as a debtor, is unable to bring a claim against SLS, a mortgage service under the CFA. *See Chulsky v. Hudson Offices, P.C.*, 777 F. Supp. 2d 823, 847 (D.N.J. 2011) (finding that "no basis ... for the CFA to reach the debt collection activities of a debt buyer of defaulted credit card debt.")

For the above reason, Defendant's motion for summary judgment on Count III is granted.

### 4. Count IV - Negligence and Recklessness

Plaintiff next asserts SLS is liable under the common law doctrines of negligence and recklessness, alleging that SLS's "actions and omissions ... constitute negligence and recklessness

13

in that Defendant [] owed Plaintiff[] a duty and a special duty of reasonable care, and said breach were the proximate cause of damages suffered by Plaintiff." (Complaint ¶59). Plaintiff argues that Defendant's mishandling of her account, as a matter of bookkeeping and accounting, is what constitutes the negligence, not the credit reporting itself. (Pl. Opposition at 11, EC No. 59). Thus these claims are not raised, nor connected to the above discussed FCRA claim.

Defendant argues that both claims of negligence and recklessness are barred. Recklessness, as an independent claim, is not recognized in the State of New Jersey. *See Phx. Pinelands Corp. v. United States*, No. 09-2237, 2010 U.S. Dist. LEXIS 40638 at *11 (D.N.J. Apr. 23, 2010) ("New Jersey does not appear to recognize an independent tort of 'recklessness.'"); *See also Dixon v. CEC Entm't, Inc.*, 2008 N.J. Super. Unpub. LEXIS 2875, *22, 2008 WL 2986422 (N.J. Super. Ct. App. Div. Aug. 6, 2018) ("New Jersey have not "squarely addressed" the viability of "recklessness" or "willful and wanton misconduct" as a cause of action...")

As to negligence, Defendant argues that any claim should be dismissed as it would again be preempted by FCRA, or, in the alternative, be dismissed for lack of merit on its face. (Def. Br. at 16).

Plaintiff may in certain instances sustain a claim for negligence under the FCRA, however may not bring independent claims under common law.

In the Complaint, Plaintiff states,

> [t]he negligence, gross negligence, and recklessness of the Defendant SLS consisted of the manner in which the Defendant handled the Plaintiff's accounting of her loan/line. The Defendant was clearly on notice of the problems, and were on notice of the Plaintiff's attempts to have them fix the problem. The Defendant willfully and knowingly ignored the Plaintiff's protests and failed to address the problem, causing the Plaintiff damages.

Plaintiff appears to allege independent tort claims. In the particular section discussing recklessness and negligence, Plaintiff does not mention FCRA. In *Williams v. Navient Solutions, Inc.*, 2017

14

U.S. Dist. LEXIS 140724, *4-5, 2017 WL 3784039 (Aug. 31, 2017), the judge reviewed the issue of FCRA preemption stating,

> Section 1681 s—2, [] provides: "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." Although […] this language is broadly preemptive, other parts of the FCRA are less expansive. Section 1681h(e) provides that defamation, invasion of privacy, or negligence claims, while ordinarily preempted by the FCRA, can be brought if "false information [is] furnished with malice or willful intent." While § 1681t(b)(1)(F), a 1996 amendment to the FCRA, is in some conflict with § 1681h of the FCRA, the scope of § 1681t's preemption has not been resolved by the Third Circuit.

*See also Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418, 424, 430 (E.D. Pa. 2006) (§ 1681t preempts only state statutory claims, but not common-law claims, as for example those hinged on whether the common law defamation claim rested on the presence of malice); *Grossman v. Trans Union, LLC*, 992 F. Supp. 2d 495, 499 (E.D. Pa. 2014) (§ 1681t preempts both statutory and common-law claims); *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 448-51 (D.N.J. Dec. 2010). This section, however, refers to claims of negligence and recklessness brought in connection to violations under the FCRA. As this Court understands it, Plaintiff is only raising the issue of negligence in the context of accounting and corrections of billing errors, not in the context of reporting and/or violation of the FCRA, therefore, the question of preemption need not be addressed.

Under New Jersey law, to state a claim for negligence, a plaintiff must set forth that the defendant owed him a duty of care, that there was a breach of that duty, and that the plaintiff suffered damages which were actually or proximately caused by the breach. *See, e.g., Jersey Central Power & Light Co. v. Melcar Utility Co.*, 212 N.J. 576, 59 A.3d 561, 571 (N.J. 2013).

"Under New Jersey law, the mere existence of a mortgage agreement between plaintiff and defendant is insufficient, as a matter of law to create any duty of care owing from Defendant to

Plaintiff." *Bank of America, N.A. v. Westheimer*, 2014 U.S. Dist. LEXIS 25642, *12 (D.N.J. Feb. 18, 2014) (citation omitted). Defendant argues that if the bank does not owe a duty of care to the Plaintiff, then neither does the loan servicer and a claim for negligence cannot survive absent a duty of care.

Further, Plaintiff has provided sufficient evidence to show that there is a genuine issue of material fact as to this Count.

### 5. Count V - Fair Debt Collection Practices Act

Plaintiff first raises an FDCPA claim in her Amended Complaint on October 27, 2016. Generally, Plaintiff alleges that "Defendants actions ... violated numerous provisions of the FDCPA including 15 U.S.C. 1692e, 1692e(2), 1692e[(5)], 1692e(8), 1692e(10), 1692e(11), 1692f, and 1692f(1)." (FAC ¶60). Specifically, she asserts that SLS violated the Fair Debt Collection Practices Act on multiple occasions, alleging that SLS "continued reporting false credit information despite knowledge that the debt was inaccurate, false, and deceptive" in violation of "15 U.S.C. § 1692(e) and its subdivisions," failing "to ever note that the alleged debt was disputed" in violation of 15 U.S.C. 1692(e)(8), violating "15 U.S.C. § 1692(e) . . . its subdivisions, [and] 15 U.S.C. § 1692(f)" for "consistently sending Plaintiff false and deceptive statements which added improper fees," and failing "to identify themselves as a debt collector in every communication with the Plaintiff" thereby violating 15 U.S.C. 1692(e)(11). (FAC ¶¶61-63).

Defendant argues that most of Plaintiff's claims under FDCPA are time-barred as a result of the one year statute of limitations imposed by 15 U.S.C. § 1692(k) and that any claims not barred by the statute of limitations are otherwise meritless. (Def. Br. at 17).

Defendant correctly points out FDCPA's one year statute of limitations since the Amended Complaint was filed on October 27, 2016. (Def. Br. at 17). Any claims occurring prior to October

27, 2015 are time barred. Thus, only FDCPA claims predicated on violations that are alleged to have happened after October 27, 2015 will proceed. Plaintiff asserts that a number of incorrect statements were routinely sent out, however in the Complaint, she only asserts one instance that falls within the identified one-year period. She states,

> [i]n or around April 2016, Plaintiff disputed the erroneous credit information that SLS was reporting to the credit reporting agency Trans Union. Plaintiff forwarded such dispute to Trans Union who forwarded the dispute to SLS.
>
> In response to the Plaintiff's dispute in April 2016, SLS "verified" to Trans Union that the erroneous credit information was correct, resulting in Trans Union keeping the erroneous information on Plaintiff's credit report. SLS did not inform Trans Union that Plaintiff disputed the credit information SLS was reporting.

(Amend Compl. ¶¶ 40-41).[6] The Court finds that instance not to be time barred.

Turning now to the claim's merits, at present, only one of the elements seems to be disputed.

> To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.

*Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). Plaintiff readily identifies as a consumer while SLS refers to itself as an LLC that "services certain mortgage loans secured by real estate and collects payments on mortgage loans as the service on behalf of the loan owner" placing it comfortably within the definition of § 1692(a)(6). (SLS SUMF ¶2; Exhibit I). There is likewise no dispute over whether Plaintiff's Loan qualifies as a "debt" per § 1692(a)(5). This leaves the presence of actual violations as the sole remaining element.

Examining the alleged failure to note the debt was in dispute in violation of § 1692(e)(8), a cursory review of the parties' briefs and record shows there is a clear disagreement as to whether

---

[6] In its opposition Plaintiff also mentioned March 9, 2016 as another instance. We consider the instances alleged in the Complaint. (Pl. Opposition at 15; FAC Ex. FF and Ex. GG).

Plaintiff notified SLS prior to reports being made to Trans Union or after. Both parties cite to *Foster v. E Partner Net* to bolster their case. (Pl.Br. at 19-20; Def. Br. at 18; No-16-6116, 2017 U.S. Dist. LEXIS 55014 (D.N.J. Apr. 11, 2017). Consequently, an issue of material fact exists and precludes summary judgment on this alleged violation.

Next, Plaintiff asserts violations arising under 15 U.S.C. 1692(e), 1692(e)(2), and 1692(e)(10) when SLS allegedly made "false, deceptive, or misleading statements" in connection with an attempt to collect a debt. (FAC ¶61; Plaintiff Brief at 20). Both parties have submitted a series of documents as exhibits to bolster their arguments that the correspondences were either "false, deceptive, or misleading" or not.(ECF No. 44, 47). However, there is insufficient material to conclude whether or not the statements and correspondences constitute "false, deceptive, or misleading statements," thus, summary judgment is inappropriate at this time.

Moving to the alleged violation of 15 U.S.C. § 1692(e)(11), failure to identify as a debt collector in all written communication, this Court finds insufficient evidence in the record to sustain this claim as there is no material in the record that shows a lack of identification on the part of SLS. Combined with that fact that phone records are not grounds for a claim, this Court finds no basis to sustain the claim under § 1692(e)(11). *See* 15 U.S.C. § 1692(e)(11) (specifying "written communication").

Finally, Plaintiff asserts that SLS violated 15 U.S.C. § 1692(f) and § 1692(f)(1) by way of improperly imposing on Plaintiff late fees. (Pl. Br. at 22). However, SLS correctly acknowledges that Plaintiff's Home Equity Credit Line Agreement and Disclosure Statement includes a clause stipulating that the Plaintiff agrees to "pay a late fee of 5% of the late payment" if the minimum payment isn't made within fifteen days of the due date, thereby insulating SLS from this exact liability. (Def. Opposition at 8). *See* 15 U.S.C. § 1692(f)(1) ("The collection of any amount

(including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.")

Plaintiff cites to a single statement wherein a $5.00 late fee is listed as an outstanding late charge in March of 2016. (Pl. Br. at 22; Exhibit I stamped at 487). As SLS clarifies, this late fee was first incurred on the March 2013 statement when Plaintiff failed to make the minimum payment due, paying only $110.00 on January 22, 2013 when the amount billed on December 31, 2012 was $117.13. (Def. Opposition at 8; Pl. Exhibit I stamped at 170-173). This insufficient payment then incurred the $5.00 late charge, first appearing on the March 2013 statement. (Def. Opposition at 8; Pl. Exhibit I stamped at 170-173). Provided all such late charges fall within the above mentioned agreement, there is no violation of §1692(f) or § 1692(f)(1) as all such fees fall within the express agreement exception.

For the above reasons, Plaintiff's motion for summary judgment on Count V is denied. Defendant's motion for summary judgment on Count V is granted with respect to the claims arising under 15 U.S.C. 1692(e), 1692(e)(2), 1692(e)(10),1692(f) and 1692(f)(1). Defendant's motion for summary judgment on Count V with respect to the remaining claims is denied.

## ORDER

This matter, having come before the Court on Plaintiff Debra Brancato's motion for partial summary judgment (ECF No. 43 and 62) and Defendant Specialized Loan Serving, LLC's motion for summary judgment (ECF No. 45 and 47), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 8th day of June, 2018,

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part, as follows:

> Count I (FCRA) is **DENIED**;
> Count II (RESPA) is **DENIED**;
> Count III (CFA) is **GRANTED**;
> Count IV (Negligence and Recklessness) is **DENIED** as to the Negligence charge; and **GRANTED** as to the Recklessness charge;
> Count V (FDCPA) is **GRANTED** as to charges arising under 15 U.S.C. § 1692(e), § 1692(e)(2), § 1692(e)(10), § 1692(f), and §1692(f)(1) and charges barred by the statute of limitation; and **DENIED** as to the remaining charges.

                         _/s/ Peter G. Sheridan_
                         PETER G. SHERIDAN, U.S.D.J.